IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEE THOMAS MURPHY,

    Plaintiff,                          No. CIV S-09-2587 JAM DAD PS

    v.

ARNOLD SCHWARZENEGGER,

    Defendant.                        FINDINGS AND RECOMMENDATIONS

/

        This case came before the court on December 11, 2009, for hearing of defendant's motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 7.) Tom Blake, Esq. appeared telephonically on behalf of the moving party. Plaintiff, who is proceeding pro se in this action, appeared in court on his own behalf.

        Less than an hour prior to the December 11, 2009 hearing on defendant's motion to dismiss, plaintiff filed a request to continue the hearing to February 26, 2010. (Doc. No. 11.) In his written request and in open court, plaintiff represented that he sought a continuance in order to retain counsel and allow counsel time to prepare a response to defendant's motion. Defendant did not oppose a continuance for these purposes. The court granted plaintiff's request in part and continued the hearing to February 19, 2010. In light of plaintiff's representations about retaining counsel, the undersigned ordered that if an amended complaint were filed prior to

1

February 5, 2010, defendant's motion to dismiss would be dropped from the calendar and denied as moot. (Doc. No. 13.)

On February 4, 2010, plaintiff, still proceeding pro se, filed a document titled "First Amended Complaint." (Doc. No. 14.) By order filed February 11, 2010, the new pleading was dismissed for several reasons, including plaintiff's attempt to join and represent an entity plaintiff that can proceed only through counsel, and his attempt to add numerous defendants and allege new claims and new legal theories arising from events unrelated to those alleged in his original pleading. (See Doc. No. 15.) The court also took judicial notice of court records showing that the proposed new claims arising from events that occurred in Arizona are duplicative of claims already alleged by plaintiff in several lawsuits pending in federal court in Arizona. The court declined to dismiss defendant's pending motion as moot, and the hearing of defendant's motion was continued to March 5, 2010. Plaintiff was ordered to file any opposition to the motion on or before February 19, 2010. Plaintiff was cautioned that no further extension of time would be granted for filing opposition to defendant's motion. Plaintiff was also cautioned that failure to file timely opposition could result in a recommendation that this case be dismissed for lack of prosecution and as a sanction for failure to comply with court orders and applicable rules.

On February 19, 2010, plaintiff filed what he characterized as a second amended complaint and an objection to the order dismissing his first amended complaint. (Doc. No. 16.) Plaintiff did not file any opposition to defendant's motion to dismiss. By order filed March 3, 2010, plaintiff's objection to the February 11, 2010 order was overruled and the proposed second amended complaint was disregarded. (Doc. No. 19.) Defendant's unopposed motion to dismiss was taken under submission, and the hearing set for March 5, 2010 was vacated.

Upon consideration of all written materials filed in connection with defendant's motion to dismiss as well as relevant portions of the file, the undersigned recommends that defendant's motion to dismiss be granted and that this action be dismissed with prejudice.

PLAINTIFF'S COMPLAINT

On September 16, 2009, the plaintiff filed a 327-page complaint and paid the required filing fee. The Clerk issued a summons for California Governor Arnold Schwarzenegger, the sole named defendant.

The complaint commences with a jurisdictional statement in which plaintiff asserts jurisdiction "under 33 U.S.C. § 1365(a) over violations of any effluent standard or limitation established pursuant to 33 U.S.C. Chapter 26 - Water Pollution Prevention and Control effective July 1, 1973." (Compl. ¶ 1.) Plaintiff asserts that venue is proper in the Eastern District of California because the state capital is located in this district, the defendant, as governor of the State of California, resides in this district, and all events and omissions giving rise to plaintiff's claims are the result of the defendant's failure to act in accordance with his duty as governor. Plaintiff states that his address is a residence in Los Osos, California. (Compl. ¶¶ 2-4.)

In his complaint plaintiff alleges as follows. The community of Los Osos was identified as being responsible for degrading water quality along the Central Coast of California by pollutant discharges from approximately 4,500 conventional septic systems. In 1983, the Regional Water Quality Control Board (Water Board) passed a resolution prohibiting the use of onsite disposal systems, i.e., septic systems, in the Los Osos community in San Luis Obispo County (County) on Morro Bay. The resolution went into effect on November 1, 1988. Approximately 15,000 residents live in approximately 4,500 homes in the prohibition zone. Los Osos does not have a community sewage collection system or a wastewater treatment plant. In 1992 and 1993, plaintiff and others urged the County and the Water Board to consider, as a solution for the prohibition zone, the "at-source innovative and alternative control technology" developed by Advanced Environmental Systems, Inc. (AES).[1] Plaintiff believed his alternative technology would reduce nitrate discharges to an amount well within the requirements of the

---

[1] Exhibits to plaintiff's complaint reveal that he is the president of AES, Inc. (See Compl., Ex. 18 at 6, Ex. 19 at 2.)

resolution that went into effect on November 1, 1988. The County and the Water Board requested a third-party evaluation and certification to verify the denitrification performance capability of the AES system.

In 1994, AES invested approximately $150,000 in a six-month performance evaluation. Despite certified results and federal law favorable to AES technology, the County refused to recognize federal law, refused to comply with the Water Board's prohibition resolution, and refused to consider implementing the AES alternative. By 1999 the County's efforts to develop a solution for the Los Osos prohibition zone had failed. In 1999, the Los Osos Community Service District (Service District) was formed to develop a community sewage system. The Water Board confirmed a state of emergency in the Los Osos prohibition zone in May 1999 and caused Los Osos owners and operators of sources of point-source discharge to be served with cease-and-desist orders. In 2005 the Service District obtained permits from the Water Board to build a sewer system without considering innovative alternatives. The system was funded by a $135 million loan issued by the state to the Service District. Local residents opposed to the sewer system project successfully recalled three of the five Service District board members and replaced them with members who were opposed to the project. In September 2005, the newly constituted Service District board issued stop-work notices to the contractors who were building the sewer system. In August 2006, the District filed for bankruptcy due to money owed to unpaid contractors and is now approximately $40 million in debt. In September 2006, the Water Board attempted to force the citizens of Los Osos to support the County sewer project by issuing 46 individual state cease-and-desist orders mainly to individuals who were opposed to the sewer system. The Water Board was willing to approve the AES alternative system, but the Service District and the County refused to consider the AES proposal. Authority to develop a community sewage treatment system was transferred from the bankrupt Service District to the County by state legislation. The County did not accept responsibility for the Los Osos project.
/////

In August 2007 plaintiff presented the alternative technology to the Water Board as a solution.  In the fall of 2007, the County obtained voter approval, through threats and intimidation tactics, to place liens on the homes in the Los Osos prohibition zone to obtain bond funding to build a community sewer system estimated to cost about $250 million.  The sustainable alternative water source (SAWS) system would cost only $25 million at most, with federal and state financial assistance.  In February 2008, plaintiff installed a SAWS technology system at his residence in Los Osos.  The County Planning and Building Department issued plaintiff a permit for his SAWS installation, but the Service District refused to allow plaintiff to disconnect from the publicly owned water treatment works and began to take the new water produced by plaintiff's system instead of permitting him to benefit from re-use of that water.  In October 2008, AES again submitted a proposed agreement to the County, but the County disregarded it.  In November 2008, AES presented a proposal to the County's Director of Public Works, but the County disregarded the proposal and continued studying the project.  When the two-year study was complete, the County submitted its findings to the California Coastal Commission for acceptance, but the findings were rejected.  In February 2009, the County Public Works Department sent out a questionnaire to all residents of the Los Osos prohibition zone about two different types of waste managing systems, but did not include the SAWS technology as one of the options despite the fact that plaintiff had been operating a SAWS system for about a year.

On February 9, 2009, plaintiff delivered to the Governor's Office in Sacramento draft proposed alternative requirements and regulations for water treatment, as well as a draft executive order addressing the need to control toxic discharges into drinking water.  The defendant did not respond to plaintiff's written request for a meeting.  On February 27, 2009, the defendant issued a State of Emergency - Water Shortage Proclamation finding California to be in an official drought condition.  In March 2009, the California Coastal Commission sent a letter to the director of the County Public Works Department rejecting all options proposed.  Plaintiff

believes that the Service District, the County, and the Water Board do not intend to consider alternatives that would eliminate the need for an expensive and unnecessary system of sewage collection and centralized treatment, i.e., publicly owned treatment works. (Compl ¶¶ 5-43.)

In a claim titled "Negligence of Defendant," plaintiff alleges that the governor has strict liability to exercise a duty of care commensurate with the foreseeable risk of danger to public health resulting from emergencies proclaimed within his jurisdiction. 33 U.S.C. § 1370. In this regard, plaintiff claims that the governor has a duty to adopt standards that establish "a value of public water supplies." 33 U.S.C. § 1313(c)(1) and (c)(2)(A). The governor has a nondiscretionary duty to uphold federal environmental laws to protect the quality of the human environment. 33 U.S.C. §§ 1365 & 1371(c)(1). The governor has a duty to adopt and enforce effluent limitations and various other limitations and standards for control of pollutants. 33 U.S.C. §§ 26, 1311, 1312, 1316, 1317, 1318, 1321(b)(3), 1328, 1342, 1345, & 1370. Defendant Schwarzenegger breached his duty to protect the public health or welfare, enhance the quality of water, and protect the value of public water supplies. He was negligent for failing to recognize various federal laws, adopt and enforce various limitations and standards, establish "a value of public water supplies," uphold federal environmental laws, exercise his authority to adopt and enforce standards and limitations, and uphold other federal environmental laws. He was complicit with San Luis Obispo County and various agencies in violation of federal bankruptcy law by not paying plaintiff for new water they took from him. Defendant Schwarzenegger was acting within the scope of his duties as governor, and as a result of his negligence and complicity, plaintiff's livelihood was endangered, the cease-and-desist order on plaintiff's property could not be complied with, the prohibition zone continued, plaintiff suffered economic hardship by the placement of a lien on his property, and plaintiff was caused to be in violation of defendant's emergency drought proclamation. (Compl. ¶¶ 44-57.)

In his prayer for relief, plaintiff seeks orders requiring defendant Schwarzenegger to (1) pay plaintiff $580.40 for water that was produced by his alternative water system but was

6

taken from him, (2) adopt certain standards, (3) direct San Luis Obispo County to take certain actions, (4) lift all cease-and-desist orders within the Los Osos prohibition zone, (5) lift the liens on properties located within the Los Osos prohibition zone, and (6) lift the Los Osos Prohibition. (Compl. at 13-14.)

## LEGAL STANDARDS APPLICABLE TO DEFENDANT'S MOTION TO DISMISS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). The court is permitted to consider material which is properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

/////

/////

ANALYSIS

Defendant seeks dismissal of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to allege facts sufficient to support liability against defendant on any theory alleged in the pleading. Defendant also argues that the State of California and state officials are immune from suit under the Eleventh Amendment, that plaintiff's suit is barred by the Rooker-Feldman doctrine, and that any state law claims are barred by plaintiff's failure to allege the filing of a timely claim with the State Victim's Compensation and Government Claim Board.

Defendant requests that the court take judicial notice of the following documents filed in federal and state court cases in which plaintiff was the plaintiff or appellant: (1) in Murphy v. U.S. Environmental Protection Agency, Case No. 08-cv-04876-SI (N.D. Cal. 2008), plaintiff's complaint for declaratory and injunctive relief, the state defendants' motion to dismiss for improper venue or to transfer the action to the Central District of California, and the order filed October 7, 2009, dismissing plaintiff's action pursuant to his motion to withdraw it; (2) in Murphy v. State of California, Case No. CV 080510 (San Luis Obispo County Super. Ct. 2008), the order filed July 24, 2009, sustaining defendants' demurrer to plaintiff's declaratory relief cause of action and striking all other causes of action; and (3) the docket for Murphy v. State of California, et al., Case No. B219046 (Cal. Ct. App., 2d App. Dist. 2009), plaintiff's appeal from the ruling in Superior Court Case No. CV 080510, reflecting plaintiff's appeal being in default and subject to dismissal on October 8, 2009. (Def't's Mot. to Dismiss, Exs. A - E.) The court takes judicial notice of these documents pursuant to Federal Rule of Evidence 201. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (on a motion to dismiss, court may consider matters of public record); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (on a motion to dismiss, the court may take judicial notice of matters of public record).

Below, the court examines each of defendant's arguments in support of the motion to dismiss in turn.

I. <u>Failure to State a Claim for Negligence</u>

Defendant notes that the elements of negligence under California law are (1) duty, i.e., the defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) breach of the duty, i.e., failure to conform to the standard; (3) proximate cause, i.e., a reasonably close connection between the defendant's conduct and resulting injuries; and (4) damages, i.e., actual loss to the plaintiff.  Defendant argues that plaintiff's claim for negligence does not allege any actionable duty breached by defendant or any breach that proximately caused damages to plaintiff.

The court finds that plaintiff's complaint fails to allege facts stating the elements of a negligence claim.  Although plaintiff asserts jurisdiction under 33 U.S.C. § 1365(a) "over violations of any effluent standard or limitation established pursuant to 33 U.S.C. Chapter 26 - Water Pollution Prevention and Control effective July 1, 1973," the pleading is devoid of any link between the court's jurisdiction over violations of effluent standards or limitation and the bald allegation of negligence by defendant.  Plaintiff fails to allege what the defendant's duty was relative to CWA standards or limitations, and when and how the defendant breached that duty and caused harm to plaintiff.  Plaintiff's complaint reflects that any alleged harm to plaintiff had been ongoing for years, and plaintiff does not allege any facts showing that plaintiff's alleged loss – the taking of his "new water" by local water authorities – was proximately caused by a duty owed to plaintiff by defendant Schwarzenegger.

Plaintiff's vague assertion of the defendant's failure to act in accordance with his duty as governor falls far short of alleging enough facts to state a claim to relief that is plausible on its face.  Although plaintiff has cited more than a dozen sections of Title 33, none supply the missing allegations regarding defendant's duty and breach thereof.  <u>See</u> 33 U.S.C. §§ 1281, 1282, 1311, 1312, 1313, 1316, 1317, 1318, 1321, 1328, 1342, 1345, 1365, 1370 & 1371.  For example, 33 U.S.C. § 1313(c)(1) merely provides that the governor of a state or the state water pollution control agency of the state "shall from time to time (but at least once each three year period

beginning with October 18, 1972) hold public hearings for the purpose of reviewing applicable water quality standards and, as appropriate, modifying and adopting standards." Plaintiff has not alleged any breach of this statute. Indeed, many of the statutes cited by plaintiff in his complaint do not contain any mention of the governor of the state. See, e.g., 33 U.S.C. §§ 1313(c)(2)(A) & 1371(c)(1). Plaintiff's allegation of complicity by defendant Schwarzenegger with the relevant political subdivisions is unsupported by any factual allegation, and the relief sought by plaintiff is not supported by allegations demonstrating that the requested relief is within defendant's power.

The court finds that plaintiff's complaint fails to state a claim upon which relief may be granted. Defendant's motion to dismiss pursuant to Rule 12(b)(6) should therefore be granted.

II. <u>Eleventh Amendment Immunity</u>

Defendant argues that the Eleventh Amendment provides the State of California, state agencies, and state officers acting in their official capacity with immunity from suit. Defendant points to plaintiff's statement that all acts alleged were done by defendant within the scope of his duties as governor and plaintiff's demand for relief that could only be granted by the defendant in his official capacity. Defendant asserts that the Eleventh Amendment bar applies to suits seeking injunctive or declaratory relief as well as suits seeking damages.

Plaintiff has not sued the State of California or any of its agencies. He has sued the Governor of the State of California in his official capacity pursuant to the Federal Water Pollution Control Act, more commonly known as the Clean Water Act (CWA), 33 U.S.C. § 1251 <u>et seq.</u> The statute plaintiff relies upon for jurisdiction provides that

> any citizen may commence a civil action on his own behalf –
>
> > (1) <u>against any person (including (i) the United States, and (ii) any other government instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution)</u> who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an

/////

> order issued by the [EPA][2] Administrator or a State with respect to such a standard or limitation . . . .
>
> The district courts shall have jurisdiction,[3] without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the [EPA] Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

33 U.S.C. § 1365(a) (emphasis added).

In general, the Eleventh Amendment bars suits against a state, absent the state's affirmative waiver of its immunity or congressional abrogation of that immunity. Pennhurst v. Halderman, 465 U.S. 89, 98-99 (1984); Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003); Yakama Indian Nation v. State of Washington Dep't of Revenue, 176 F.3d 1241, 1245 (9th Cir. 1999). The Eleventh Amendment also bars federal suits, whether seeking damages or injunctive relief, against state officials where the state is the real party in interest. Pennhurst, 465 U.S. at 101-02.

The Ninth Circuit has expressly held that states and state agencies are entitled to Eleventh Amendment immunity from suits brought under the CWA. Natural Resources Defense Council v. California Dep't of Transp., 96 F.3d 420, 423 (9th Cir. 1996). In general, state immunity extends to state officials. Id. at 421. However, in Ex Parte Young, 209 U.S. 123 (1908), the Supreme Court held that federal courts have jurisdiction over suits against state officers to enjoin official actions that violate federal statutory or constitutional law, even if the state itself is immune from suit under the Eleventh Amendment. Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1183-84 (9th Cir. 1997) (citing Ex Parte Young, 209 U.S. at 155-56);

---

[2] A reference to "Administrator" in the CWA is a reference to the Administrator of the Environmental Protection Agency. 33 U.S.C. § 1251(d).

[3] The Ninth Circuit has joined the majority of federal courts in holding that the federal courts have exclusive jurisdiction over citizen suits brought pursuant to federal environmental laws, including the CWA. See Natural Resources Defense Council v. U.S. E.P.A., 542 F.3d 1235, 1242 (9th Cir. 2008).

Natural Resources Defense Council, 96 F.3d at 422-23 (citing Ex Parte Young).  Nonetheless, the Supreme Court has explained that the Ex Parte Young exception to sovereign immunity must be applied with a proper appreciation of its purpose.  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269-71 (1997).

Here, the court finds that defendant is entitled to Eleventh Amendment immunity against plaintiff's requests for prospective injunctive relief as well as his request for damages.  As set forth supra, plaintiff's claim against the defendant Schwarzenegger is one of negligence, and plaintiff has failed to allege facts that state a claim of negligence.  In the absence of allegations demonstrating defendant's violation of federal statutory or constitutional law, defendant is entitled to immunity from plaintiff's suit.

III. Rooker-Feldman Doctrine

Defendant contends that plaintiff raised the same facts and sought the same relief in his action filed in the San Luis Obispo County Superior Court and therefore review of the matter in this court is precluded by the Rooker-Feldman doctrine.  The court finds this argument unpersuasive.

Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction to review alleged errors in state court decisions.  Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) (holding that review of state court determinations can be obtained only in the United States Supreme Court). The doctrine applies to "cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  "The purpose of the doctrine is to protect state judgments from collateral federal attack."  Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001).  Put another way, a federal district court is prohibited from exercising subject matter jurisdiction over a suit that is "a de facto appeal" from a state court

judgment. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). A federal district court may not examine claims that are inextricably intertwined with state court decisions, "even where the party does not directly challenge the merits of the state court's decision but rather brings an indirect challenge based on constitutional principles." Bianchi v. Rylaarsdam, 334 F.3d 895, 900 n.4 (9th Cir. 2003). See also Ignacio v. Judges of U.S. Court of Appeals, 453 F.3d 1160, 1165-66 (9th Cir. 2006) (affirming district court's dismissal of the case "because the complaint is nothing more than another attack on the California superior court's determination in [plaintiff's] domestic case").

Here, the court is unable to find that plaintiff seeks review, directly or indirectly, of the San Luis Obispo County Superior Court's rulings. Defendant Schwarzenegger was not a defendant in the Superior Court case initially and, although he was named in plaintiff's amended complaint, the state court declined to consider new claims alleged by plaintiff without having sought prior leave of court. The court had previously dismissed plaintiff's claims of defamation, trade libel and tortious interference without leave to amend, and those claims were ordered stricken from the first amended complaint. The court had granted plaintiff leave to amend his cause of action for declaratory relief regarding invention but determined that plaintiff failed to amend the claim to allege a controversy that required a declaration of the parties' rights. (Def't's Mot. to Dismiss, Ex. D.) In the present case, the defendant and plaintiff's claim against that defendant do not require this court to review any of the rulings made by the state court. Thus, plaintiff's lawsuit in this court is not a de facto appeal from the state court judgment and is not barred under the Rooker-Feldman doctrine.

IV. Futility of Amendment

The undersigned has carefully considered whether there is any possibility that plaintiff may amend his complaint to state a cognizable claim that would not be subject to dismissal for failure to state a claim or immunity under the Eleventh Amendment. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."

California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court does not have to allow futile amendments).  It appears that leave to amend would be futile in this instance given the nature of plaintiff's complaint and the defects noted above.

In addition, this court is not the proper venue for the action plaintiff seeks to pursue.  Plaintiff has relied on the general venue statute, 28 U.S.C. § 1391(a), despite the specific venue provision found in the CWA: "Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located."  33 U.S.C. § 1365(c) (emphasis added).  Plaintiff's complaint begins with his allegation of jurisdiction under 33 U.S.C. § 1365(a) "over violations of any effluent standard or limitation," and the allegations of the pleading reflect that the discharge sources are located in San Luis Obispo County, which is part of the Central District of California.  28 U.S.C. § 84(c)(2).

Finally, plaintiff has demonstrated in this action and in his state court action that he cannot be relied upon to amend in good faith.  In this case, he attempted, not just once, but twice, to join and represent co-plaintiffs who must be represented by counsel and to expand this suit far beyond the scope of the original pleading, adding federal defendants and numerous defendants who reside in another state.

For all of these reasons, the undersigned will recommend that plaintiff's complaint be dismissed without leave to amend.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss (Doc. No. 7) be granted; and

2. Plaintiff's complaint be dismissed without leave to amend and this action be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file and serve written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed and served within seven days after the objections are served. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 8, 2010.

/s/ Dale A. Drozd

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.pro se\murphy2587.f&r.mtdgr